IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

ANTHONY TAYLOR,

    Defendant.

Criminal No. 18-0093

ELECTRONICALLY FILED

## MEMORANDUM OPINION DENYING DEFENDANT ANTHONY TAYLOR'S MOTION FOR NEW TRIAL PURSUANT TO FED.R.CRIM.P. 33(a) (Doc. 200)

Pending is Defendant Anthony Taylor's Motion for New Trial Pursuant to Federal Rule of Criminal Procedure 33(a) ("Motion for a New Trial").  (Doc. 200).  Defendant's Motion For a New Trial is based upon purportedly newly discovered evidence, (*id*. at 1, 27), and is timely filed.[1]

  *I.*  *Background*

Defendant was charged by Superseding Indictment with: (1) distribution and possession with the intent to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (2) conspiracy to distribute 40 grams or more of fentanyl in violation of 21 U.S.C. § 846; (3) possession with the intent to distribute 40 grams or more of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vi); (4) conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846; and (5) possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (Doc. 39).

---

[1] "Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty."  Fed. R. Crim. P. 33.  Defendant was found guilty on all counts of the Superseding Indictment, and the verdict was entered, on February 13, 2019.  (Doc. 117, Doc. 123).

Defendant originally was represented by able counsel, but on February 1, 2019, less than one week prior to the start of Defendant's jury trial, Defendant filed a motion to proceed *pro se*. (Doc. 100).  After a hearing on the Motion, the Court granted Defendant's Motion to proceed *pro se.*  (Doc. 101, Doc. 102).  Defendant's jury trial commenced on February 6, 2019, with former counsel acting as Defendant's standby counsel.  (Doc. 104).

On February 13, 2019, the jury returned a guilty verdict against Defendant on all charges filed against Defendant.  (Doc. 123).[2]

On October 30, 2019, Defendant was sentenced to 150 months at each count of conviction, all terms to be served concurrently.  (Doc. 167).

Defendant timely filed a direct appeal.  (Doc. 169).  On May 18, 2021, the United States Court of Appeals for the Third Circuit affirmed this Court's October 30, 2019 Order of Court, entering the judgment and sentence against Defendant (Doc. 167).  (Doc. 188).

On July 2, 2021, Defendant filed a Motion for Leave to File for Reconsideration of Defendant's Motion to Suppress and Request for Franks Hearing.  (Doc. 193).

On August 2, 2021, this Court denied Defendant's Motion for Leave to File for Reconsideration of Defendant's Motion to Suppress and Request for Franks Hearing (Doc.  193) without prejudice to Defendant to refile said motion after the Court of Appeals for the Third Circuit had issued its mandate with respect to Defendant's direct appeal, and returned jurisdiction over Defendant's criminal case to this Court.  (Doc. 196).

On October 4, 2021, the Court of Appeals for the Third Circuit issued its mandate. (Doc. 199).

---

[2] The jury did not unanimously find that the government proved beyond a reasonable doubt that the weight of the mixture or substance containing cocaine involved in the conspiracy to distribute cocaine (as charged in Count 4 of the Superseding Indictment) was five hundred (500) grams or more. (Doc. 123 at 4).

On December 10, 2021, Defendant filed the pending Motion for a New Trial.  (Doc. 200).

On January 14, 2022, the Government filed its Response to Defendant's Motion for a New Trial, opposing Defendant's Motion for a New Trial.  (Doc. 202).

On February 8, 2022, Defendant filed his Reply to Government's Response to Defendant's Motion for a New Trial.  (Doc. 203).

On March 24, 2022, the Government filed an Errata, because it had not attached to its Response to Defendant's Motion for a New Trial (Doc. 202), an exhibit referenced in its Response, a Pennsylvania Office of Attorney General ("POAG") October 5, 2017 Seized Money Report, which was Trial Exhibit 163 at Defendant's jury trial .  (Doc. 204).

Defendant's Motion for a New Trial (Doc. 200), thus, has been fully briefed, and is ripe for adjudication.

II.        *Standard of Review*

Federal Rule of Criminal Procedure 33(a) permits a court to "vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  The decision to grant or deny a motion for new trial lies within the court's discretion.  *U.S. v. Vitillo*, 490 F.3d 314, 325 (3d Cir. 2007).  In considering a motion for new trial, this Court must "exercise great caution in setting aside a verdict reached after fully-conducted proceedings," and particularly so where "the action has been tried before a jury."  *U.S. v. Kelly*, 539 F.3d 172, 182 (3d Cir. 2008) (quoting *U.S. v. Kamel*, 965 F.2d 484, 493 (7th Cir. 1992)).  A district court may order a new trial "only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted."  *U.S. v. Staten*, 557 F. App'x 119, 121 (3d Cir. 2014) (quoting U*.S. v. Silveus*, 542 F.3d 993, 1004–05 (3d Cir. 2008)).

III.    *Discussion*

As stated, Defendant's Motion for a New Trial is premised upon purportedly newly

discovered evidence. (Doc. 200 at 1, 17).  In *United States v. Schneider*, 801 F.3d 186, 201–02

(3d Cir. 2015), the United States Court of Appeals for the Third Circuit explained:

> In order to succeed on a motion for a new trial based on newly-discovered evidence,
> the defendant carries the burden of establishing five elements:
>
> (a) [T]he evidence must be in fact newly discovered, *i.e.*[,] discovered since trial;
> (b) facts must be alleged from which the court may infer diligence on the part of
> the movant; (c) the evidence relied on must not be merely cumulative or
> impeaching; (d) it must be material to the issues involved; and (e) it must be such,
> and of such nature, as that, on a new trial, the newly discovered evidence would
> probably produce an acquittal.

*Schneide*r, 801 F.3d 186, 201–02 (3d Cir. 2015) (quoting *U.S. v. Quiles*, 618 F.3d 383, 388–89

(3d Cir. 2010) (internal quotation marks omitted).

The Court of Appeals for the Third Circuit has recognized that motions for a new trial

under Rule 33 "are not favored and should be granted sparingly and only in exceptional cases."

U.S. v. Wrensford, 866 F.3d 76, 93 n. 9 (3d Cir. 2017) (quoting *U.S. v. Silveus*, 542 F.3d 993,

1005 (3d Cir. 2008)).  For the following reasons, this is not an exceptional case, Defendant has

not established entitlement to a new trial, and thus, Defendant's Motion For a New Trial shall be

denied.

> A.  *Defendant Has Established "Newly Discovered" Evidence in the Information
>      Contained in the RTK Documents Only*

Defendant's Motion for a New Trial is based upon Defendant obtaining allegedly new

evidence from the Pennsylvania Office of Attorney General which evidence that:

> TFO Kelch committed perjury by testifying that the August 28, 2017 alleged
> controlled purchase money and payment to CI money (the money) was placed in
> the Pennsylvania Office of Attorney General (PAOG) (sic.) Computer System
> (CPS) to electronically record the serial numbers on or before August 28, 2017 and
> upon seizing [Defendant's] money on August 30, 2017, TFO Kelch placed the

4

seized money in the same POAG CPS and because the money was previously documented the POAG CPS automatically identified the money comingled with [Defendant's] seized money.

(Doc. 203 at 1).

The "new" documentation upon which Defendant's false testimony/perjury allegation is based is: (1) a January 13, 2021 letter response ("January 13, 2021 Response Letter"), issued by the Pennsylvania Office of Attorney General ("POAG") to Defendant in response to a November 17, 2020 Pennsylvania Right to Know request submitted by Defendant ("Defendant's RTK Request"),[3] wherein Defendant's RTK Request was granted in part, denied in part, and could not be granted in part;[4] and (2) the POAG's subsequent production (once Defendant paid copying

---

[3] Defendant's Right to Know request to the POAG states in relevant part:

This PRTK [Pennsylvania Right to Know] seeks any and all documented serial numbers of United States currency assigned to criminal case number BN6001217, in particular, Batch id: SM001363; Transaction id; CE00027305 and CE00027306, including, but not limited to: computer generated recorded U.S. currency serial numbers on or before 8/28/2017, being submitted through the bureau of narcotics investigation computer system, acknowledgement of all receipt of U.S. currency bearing serial numbers reflected in attachment "A" under the title "matching funds" by any and all Task Force Officers (TFO) employed by the Pennsylvania Office of Attorney General, in particular, TFO Stephen Kelch, Agents Kristin Johnson and Richard Woznicki, on or before 8/28/2017, any and all receipts or emails in the possession of the Pennsylvania Office of Attorney General's Secretary who handles the Bureau of Narcotics financial fund (as testified by TFO Kelch, see attachment "B") reflecting the serial numbers listed in Attachment "A" under the title "matching funds", any and all dates and timestamps of photos taken by TFO Kelch of the U.S. currency depicted in attachments "C" and "D", taken by TFO Kelch's cellular phone (as testified by TFO Kelch – see attachment "E") on or before 8/28/2017.

(Doc. 200-20 at 1).

[4] The POAG's January 13, 2021 Response said in relevant part:

The "identified records" are those stated in your December 7, 2020 request, as modified by any subsequent communications. Specifically, your request indicates that you are seeking the following information, related to criminal case number BN6001217:

1.  . . . any and all documented serial numbers of United States currency assigned to criminal case number BN6001217, in particular, Batch id: SM001363; Transaction id: CE0027305 and CE0027306, including, but not limited to: computer generated recorded U.S. currency serial numbers on or before 8/28/2017, being submitted through the bureau of narcotics investigation computer system,

2.  Acknowledgement of receipt of U.S. currency bearing serial numbers reflected in attachment "A" . . .

_____

3. Any and all receipts and e-mails in the possession of the Pennsylvania Office of Attorney General's Secretary who handles the Bureau of Narcotics financial fund . . .

4. Any and all dates and timestamps of photos taken by TFO Kelch of the U.S. currency depicted in attachments "C" and "D" . . .

A full and complete search pursuant to the requirements of the RTKL has been conducted.  It has been determined that your request is granted in part, respectfully denied in part and cannot be granted in part. Please see the below explanations.

## REQUEST #1, 2,and 3

### Granted In Part

Your request has been reviewed and is granted in part, to the extent that records exist and are disclosable under the RTKL.  Available for access are copies of all documented serial numbers of United States currency and acknowledgement of receipt of U.S. currency, in relation to the investigation of your case (30 total pages).

. . .

### Denied In Part

Certain records have been redacted in part or have been withheld in their entirety, based upon the exemptions listed below:

### Criminal Investigation Exemption

Certain of the records you are seeking contain criminal investigative information and under the RTKL are excluded from disclosure based upon the criminal investigative exemption.  . . .  In this case, certain of the records contain information pertaining to other defendants or seizures that are not related to your criminal investigation.  Additionally, the emails with attached receipts you are seeking contain investigative information, the disclosure of which would reveal the institution, progress or result of the criminal investigation against you.  As such, the records related to other defendants, and the email and attached receipts related to the investigation against you, qualify for the criminal investigative exemption and are barred from disclosure.

Additionally, the records would also be protected from disclosure by other laws, such as CHRIA, as more fully explain below.

. . .

## REQUEST #4

### Not Granted – No Records Found

A full and complete search pursuant to the requirements of the RTKL has been conducted, based upon the parameters of your request, as set forth above, and it has been determined that the requested information – dates and timestamps of photos taken by Detective Kelch – does not exist as a record of this agency and we are not required to create a record that does not exists.  . . .  In this instance, the OAG does not have ownership or possession of the phone used by Detective Kelch, which would contain the photographs, dates and timestamps you seek.

. . .

and mailing fees) by way of a March 11, 2021 letter ("March 11, 2021 Production Letter"), of a POAG Seized Money Report, dated December 28, 2020.

The December 28, 2020 Seized Money Record is attached to Defendant's Motion for a New Trial.  (Doc. 200-20 at 11-33). The parties agree that the December 28, 2020 POAG Seized Money Report is a report identical to a trial exhibit at Defendant's trial, Trial Exhibit 163, with the exception that Trial Exhibit 163 is dated October 5, 2017, the date Trial Exhibit 163 appears to have been printed.  The Court will collectively refer to the January 13, 2021 Response Letter and the March 11, 2021 Production Letter, including the December 28, 2020 POAG Seized Money Report, as the "RTK Documents."

1.  *Pennsylvania Office of Attorney General Task Force Officer Stephen Kelch's Relevant Testimony*

Defendant's Motion for a New Trial implicates the trial testimony of POAG Task Force Officer Stephen Kelch ("TFO Kelch").

TFO Kelch testified on February 8, 2019, at Defendant's jury trial, on behalf of the Government, at which time he was cross examined by Defendant at length.  (Doc. 179 at 55-87). TFO Kelch then was recalled by Defendant on February 12, 2019, for further cross-examination, during Defendant's case-in-chief.  (Doc. 180 at 5-52, 54-56).

TFO Kelch's testimony at Defendant's jury trial was limited to two categories of evidence.  First, TFO Kelch testified as to the chain of custody of evidence obtained from: (1) two controlled drug buys involving Defendant and Anthony Scialdone (Scialdone"), a

---

**CONCLUSION**

For the above reasons, your request is granted in part, respectfully denied in part and not granted in part.  We trust that this response addresses the intent of your request.

7

confidential informant, on August 3, 2017 and August 28, 2017; and (2) a search of Defendant's house/property on August 30, 2017.  Second, TFO Kelch testified that contained within the United States ("U.S.") currency seized from Defendant's house/property on August 30, 2017, were six pieces of U.S. currency TFO Kelch had provided to Scialdone as part of the August 28, 2017 controlled drug buy with Defendant, including the process undertaken by law enforcement to establish that the six pieces of U.S. currency from the August 28, 2017 drug buy "matched" to U.S. currency seized from Defendant's house/property on August 30, 2017  (Doc. 179 at 44-87, Doc. 180 at 4-56).

It is TFO Kelch's testimony concerning the U.S. currency seized from Defendant's house/property on August 30, 2017, matching the six pieces of U.S. currency TFO Kelch had provided to Scialdone as part of the August 28, 2017 controlled drug buy with Defendant, including the process undertaken by law enforcement to establish that the funds "matched," that is at the heart of Defendant's Motion for a New Trial.

Relevant to the U.S. currency seized on August 30, 2017, as compared to the U.S. currency TFO Kelch provided to Scialdone as part of the August 28, 2017 controlled drug buy with Defendant, TFO Kelch testified as follows:[5]

First, on August 28, 2017, as part of a controlled drug buy, TFO Kelch gave Scialdone $400.00 in U.S. currency in order for Scialdone, to buy drugs from Defendant, as well as $180.00 in U.S. currency for Scialdone's participation in the controlled buy.  Second, these pieces of U.S. currency were from POAG Bureau of Narcotics Investigation ("BNI") funds. Third, BNI funds are withdrawn from a BNI bank account, and the withdrawal receipt retained by a secretary.  Fourth, the withdrawn funds are scanned through a money counter, which goes

---

[5] (Doc. 179 at 44-85, Doc. 180 at 18, 40-44).

into a BNI computer system, which records/tracks all funds, and then into TFO Kelch's possession.  Fifth, prior to giving Scialdone the U.S. currency on August 28, 2017, Kelch took photographs of the currency (the photographs were admitted into evidence at Defendant's trial as Trial Exhibits 160 and 162).  Sixth, there did not exist documentary evidence that would validate that the funds in Trial Exhibit 160 were released to TFO Kelch for the specific purpose of making a controlled heroin purchase from Defendant.  Seventh, "the money is tracked through their system and I continue to take pictures of the serial numbers,  So we keep track of them.  I have to advise when I spend the money.  I have a running log of all the serial numbers in my possession and when I turn them all in, the money is obviously gone."  Eighth, TFO Kelch did not have documentary evidence to verify that the money in the photograph (Trial Exhibit 162) was in his possession on August 28, 2017.  Ninth, after being given the $400 in U.S. currency on August 28, 2017, as part of the controlled buy, Scialdone proceeded to buy drugs from Defendant.  Tenth, after the August 28, 2017 buy occurred, Scialdone was searched, and it was determined that he no longer had the $400 in U.S. currency on his person that TFO Kelch had given Scialdone to purchase the drugs from Defendant.  Eleventh, on August 30, 2017, pursuant to a warrant, Defendant's house and property were searched, and $10,590.00 in U.S. currency was seized.  Twelfth, $10,570.00 of the seized U.S. currency was placed in a money counter, and then inputted into the POAG computer system ($20.00 worth of $1.00 bills were not placed in the money counter because it does not accept $1.00 bills).  Thirteenth, as indicated on POAG Seized Money Report dated October 5, 2017 (Trial Exhibit 163), serial numbers from six pieces of U.S. currency utilized in the August 28, 2017 controlled buy, to buy drugs and pay Scialdone, had "matched" with serial numbers of U.S. currency seized at Defendant's home/property on August 30, 2017.

With respect to the contents of the October 5, 2017 POAG Seized Money Report (Trial Exhibit 163), TFO Kelch further testified as follows:[6]

First, the Report was a summary report of seized money from the search of Defendant's house/property on August 30, 2017.  Second, when they seize money, it is placed in a money counter, which then is directly placed in a computer programming system that tracks all money "we utilize."  Third, at the end, the Report lists "matching funds," which "would be funds that were provided to an agent at some point because the money that is brought out of the office is also run through that system to put in the computer for later date of these instances."  Fourth, one $20 bill, and four $50 bills, found at Defendant's house/property on August 30, 2017, matched up with the money taken from the POAG related to the August 28, 2017 controlled buy between Scialdone and Defendant.  Fifth, one $100 bill, found at Defendant's house/property on August 30, 2017, matched up with money paid to Scialdone for his participation in the August 28, 2017 buy.  Sixth, the Report indicates which case number the funds are associated with, and then it is the officer/agent's job to go through the matching currency to verify that it was their money, which was done in this case.

> 2. *Defendant has established that the information contained in the RTK Documents, other than the December 28, 2020 Seized Money Report, is "newly discovered" evidence*

The Court finds that, other than the Seized Money Report, which Defendant agrees is the same Seized Money Report as Trial Exhibit 163, the information contained in the RTK Documents, was not discovered until after Defendant's jury trial, and therefore, these RTK Documents constitute evidence that is "newly discovered," *i.e.*, "discovered after trial." *Schneider*, 801 F.3d at 201.

---

[6] (Doc. 179 at 51-55, 84).

### 3. *Defendant has not established "newly discovered" evidence in the form of TFO Kelch committing perjury at Defendant's trial*

Defendant also asserts that the information contained in the RTK Documents establishes "newly discovered" evidence of TFO Kelch's perjurious testimony at Defendant's trial in that the RTK Documents prove, contrary to TFO Kelch's testimony, that: (1) the U.S. currency depicted in Trial Exhibits 160 and 162, was not prerecorded in the POAG computer system on or before August 28, 2017; (2) the U.S. currency depicted in Trial Exhibits 160 and 162, was not used in conjunction with the August 28, 2017 controlled drug buy with Defendant; and (3) the "matching funds" listed in the Seized Money Report were not computer generated, based on information inputted into the POAG computer system prior to the August 30, 2017 search, but instead, were manually inputted into the POAG computer system.

The information contained in the RTK Documents, however, does not prove that: (1) the U.S. currency depicted in Trial Exhibits 160 and 162, was not prerecorded in the POAG computer system on or before August 28, 2017; (2) the U.S. currency depicted in Trial Exhibits 160 and 162, was not used in conjunction with the August 28, 2017 controlled drug buy with Defendant; or (3) the "matching funds" listed in the Seized Money Report were not computer generated, based on information inputted into the POAG computer system prior to the August 30, 2017 search, but instead, were manually inputted into the POAG computer system. Accordingly, the Court finds that Defendant has not established "newly discovered" evidence of TFO Kelch committing perjury at Defendant's trial. *See U.S. v. Williams*, 974 F.3d 320, 355 (3d Cir. 2020) (explaining, "[a] witness commits perjury if he or she 'gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory'") (quoting U.S. v. Hoffecker, 530 F.3d 137, 183 (3d Cir. 2008) (quoting U.S. v. Dunnigan, 507 U.S. 87, 94 (1993)).

      B. *Defendant Has Not Established Facts "From Which the Court May Infer Due Diligence on the Part of" Defendant in Discovering His "Newly Discovered" Evidence, the Information Contained in the RTK Documents*

Nor has Defendant alleged facts from which the Court may infer due diligence on the part of Defendant in terms of discovering his "new" evidence, the information contained in the RTK Documents. *See U.S. v. Bea*m, 635 F. App'x. 28, 30 (3d Cir. 2015) (stating, in reviewing appeal of denial of a Rule 33 motion for a new trial, "[w]e agree with the District Court that some of the evidence was not new (or at least it could have been discovered with due diligence") (footnote omitted).

TFO Kelch testified on behalf of the Government on February 8, 2019, at which time he was cross examined by Defendant at length. (Doc. 179 at 55-87). TFO Kelch then was recalled by Defendant on February 12, 2019, for further cross-examination, during Defendant's case-in-chief. (Doc. 180 at 5-52, 54-56).

Having reviewed TFO Kelch's testimony, it is clear that it was TFO Kelch's testimony on February 8, 2019, that put Defendant on notice to seek the documentation Defendant subsequently requested in Defendant's RTK Request, which Defendant asserts resulted in Defendant discovering the information contained in the RTK Documents. Indeed, Defendant admits as much. *See* Doc. 200 at 13 ("TFO Kelch's testimony that the money in the photographs was actually prerecorded through the POAG CPS was the first time Movant was made aware of this process"); *id*. ("During cross examination by Movant, TFO Kelch again testified concerning the prerecording of the money"); *id.* at 28 ("Movant sought and obtained the information based upon TFO Kelch's trial testimony."). It logically follows that as of February 8, 2019, Defendant, who knowingly and voluntarily elected to represent himself at trial, could have requested the Court order the Government to produce the documentation Defendant subsequently obtained

through his RTK Request, *i.e.*, the information contained in the RTK Documents.  That

Defendant failed to do so demonstrates a complete lack of due diligence on Defendant's part, and

will not be the basis for granting Defendant a new trial.

Accordingly, because Defendant has not alleged facts "from which the court may infer

diligence on the part of" Defendant with respect to discovering his "newly discovered" evidence,

the information contained in the RTK Documents, Defendant's Motion for a New Trial shall be

denied.  *Schneider*, 801 F.3d at 201-02.

> ### C.  Defendant Has Not Established That "the Evidence Relied On" is Not "Merely Cumulative or Impeaching"

To establish that the evidence relied on, Defendant's "newly discovered" evidence, is not

"merely cumulative or impeaching," Defendant argues:

> Certainly, the evidence introduced by the government and testified to by TFO Kelch
> with respect to the August 28, 2017 alleged buy money being recovered from
> Movant's residence was the only piece of direct physical evidence that linked
> Movant to the August 28, 2017 alleged controlled drug purchase and the reliability
> of this evidence hinged solely on the credibility of TFO Kelch and now that TFO
> Kelch's testimony proves to be false, this surely is a situation where the
> "impeachment evidence is material if the witness whose testimony is attacked
> supported the only evidence linking defendant to the crime," *Wong, i.d.*  TFO
> Kelch's testimony that was given to establish Movant as a participant in the August
> 28, 2017 alleged purchase also lended great weight to the credibility of Scialdone
> (CI) and substantial support to the accusation that Movant participated in the
> August 3, 2017 alleged purchase, in turn supporting an inference of Movant's
> knowledge of the narcotics found in the coffee can on Movant's back porch. Again,
> TFO Kelch's false and perjured testimony created a situation where "the evidence
> of impeachment is material where the likely impact on the witness's credibility
> would have undermined a critical element of the prosecution's case" *Wong, i.d.*
> Where Movant's trial relied heavily on the credibility of the government's
> witnesses, the impeachment evidence now relied upon by Movant is of significant
> importance.  As this evidence relied upon by Movant "creates severe doubt as to
> the truthfulness of the critical inculpatory evidence that was introduced at trial,"
> *Quiles, i.d.*, and that is TFO Kelch's perjured testimony linking Movant to the
> crime.

(Doc. 200 at 31).

In *United States v. Quiles*, 618 F.3d 383 (3d Cir. 2010), the Court of Appeals for the Third Circuit explained, with respect to determining whether newly discovered evidence is merely impeaching, the question to be asked is:

> [I]s there a strong exculpatory connection between the newly discovered evidence and the evidence presented at trial or does the newly discovered evidence, though not in itself exculpatory, throw severe doubt on the truthfulness of the critical inculpatory evidence that had been introduced at the trial. If the answer is affirmative, then a defendant may be entitled to a new trial even though he relies on evidence that could be classified as "impeachment evidence." If the answer is negative, then the defendant is relying on mere impeachment evidence and will not be entitled to a new trial on its basis. Determining the strength and importance of the exculpatory connection or the significance of the newly discovered evidence with respect to the credibility of critical evidence given at the trial is a difficult task that is left in the first instance to the discretion of the district court.

*Quiles*, 618 F.3d at 393.

Here, as stated *supra*., Defendant has not established, through the information contained in the RTK Documents, that: (1) the U.S. currency depicted in Trial Exhibits 160 and 162, was not prerecorded in the POAG computer system on or before August 28, 2017; (2) the U.S. currency depicted in Trial Exhibits 160 and 162, was not used in conjunction with the August 28, 2017 controlled drug buy with Defendant; (3) the "matching funds" listed in the Seized Money Report were not computer generated, based on information inputted into the POAG computer system prior to the August 30, 2017 search, but instead, were manually inputted into the POAG computer system; or (4) TFO Kelch committed perjury at Defendant's trial. Moreover, the Court finds that Defendant has not otherwise established through his "newly discovered evidence, the information contained in the RTK Documents, that "there a strong exculpatory connection between the newly discovered evidence and the evidence presented at trial or [that] the newly discovered evidence, though not in itself exculpatory, throw severe doubt on the truthfulness of the critical inculpatory evidence that had been introduced at the trial." *Id*.

14

Accordingly, because Defendant has not established that "the evidence relied on," Defendant's "newly discovered" evidence, is "not merely cumulative or impeaching," *Schneider*, 801 F.3d at 202, Defendant's Motion for a New Trial shall be denied.

> ### D. Defendant Has Not Established That His "Newly Discovered" Evidence, the Information Contained in the RTK Document, is "Material to the Issues Involved"

Defendant asserts that he has established that his "newly discovered" evidence "is material to the issues involved concerning [Defendant] being a participant in the two alleged controlled drug purchases and having knowledge of the coffee can of narcotics found on Movant's back porch," because it verifies: (1) "that the August 28, 2017 alleged buy money was not prerecorded or documented in the POAG CPS prior to the search of Movant's residence on August 30, 2017;" and (2) "reveals TFO Kelch lied and could not have confirmed a match between the alleged prerecorded money and Movant's seized money by utilizing the POAG CPS." (Doc. 200 at 32).

The Court disagrees. First, again, as stated, *supra.*, Defendant has failed to establish through his "newly discovered" evidence, the information contained in the RTK Documents, that: (1) the August 28, 2017 alleged controlled buy money was not prerecorded or documented in the POAG computer system prior to the search of Defendant's residence on August 30, 2017; (2) TFO Kelch could not have confirmed a match between the prerecorded money utilized as part of the controlled drug buy on August 28, 2017, and the money seized on August 30, 2017 by utilizing the POAG computer system; or (3) TFO Kelch committed perjury at Defendant's jury trial. Moreover, the Court finds that nothing contained in Defendant's "newly discovered" evidence, the information contained in the RTK documents, is "material to the issues involved," because there is no information contained in the RTK Documents that affects the guilt or

15

innocence determination with respect to any of the offenses with which Defendant was charged in the Superseding Indictment.  Simply put, Defendant's "new" evidence, the information contained in the RTK Documents, does not relate to any one of the elements necessary for proving or disproving the charges against Defendant contained in the Superseding Indictment.

Accordingly, because Defendant has not established that his "newly discovered" evidence, the information contained in the RTK Documents, is "material to the issues involved," Defendant's Motion for a New Trial shall be denied.

> E. *Defendant Has Not Established That His "Newly Discovered" Evidence, the Information Contained in the RTK Documents, is "Such, and of Such Nature, as That, on a New Trial, the Newly Discovered Evidence Would Probably Produce an Acquittal"*

Defendant's final argument in support of his Motion for a New Trial is that:

> With the new evidence provided by the POAG, it would permit Movant to be able to testify . . . Movant's testimony being the best evidence Movant could present, would certainly, place the government's evidence in a whole different light for the jury.  However, TFO Kelch's perjured testimony prevented Movant from testifying as Movant could not overcome trying to explain how the alleged buy money was found in Movant's house that a law officer testified to recovery of the funds through a POAG CPS.  Furthermore, the new evidence would severely undermine TFO Kelch's credibility in all other areas of the government's case and as TFO Kelch was the case agent on Movant's case, TFO Kelch's credibility was a significant factor in all areas of the government's case.  Therefore, impeaching TFO Kelch with the new evidence or excluding the perjured testimony, in addition, presenting Movant's testimony would probably produce an acquittal at a new trial.  At least on counts one, two, and three.

(Doc. 200 at 33).

Even taking into consideration Defendant's "newly discovered" evidence, the information contained in the RTK Documents, the Court finds that, in light of the testimonial evidence introduced at Defendant's jury trial, which was supported by more than 100 trial exhibits, whereby the Government established beyond a reasonable doubt that Defendant was guilty of all of the charges in the Superseding Indictment as found by the jury, Defendant has not

established, and cannot establish, that his "newly discovered" evidence is "such, and of such

nature, as that, on a new trial, the newly discovered evidence would probably produce an

acquittal" with respect to any of the charges against Defendant in the Superseding Indictment.

*Schneide*r, 801 F.3d at 202.

More specifically, the overwhelming evidence introduced at Defendant's trial that

supported the jury's guilty verdict on each and every one of the charges in the Superseding

Indictment, and prevents Defendant from being able to establish that his "newly discovered"

evidence, the information contained in the RTK Documents, is "such, and of such nature, as that,

on a new trial, the newly discovered evidence would probably produce an acquittal" with respect

to any of the charges against Defendant in the Superseding Indictment included, not just TFO

Kelch's limited, credible, non-perjurious, testimony, but also: (1) Scialdone's credible testimony

about his involvement in the August 3, 2017 controlled drug buy, when he purchased fentanyl

from Defendant, and in the August 28, 2017 controlled drug buy with Defendant, as well as

Scialdone's testimony that the photograph of the firearm found during the search of Defendant's

house/property on August 30, 2017, Trial Exhibit 55, was Defendant's gun; (2) credible

testimony (and supporting exhibits)from multiple task force officers who participated in, and

observed Scialdone and Defendant during, the two controlled drug buys; (3) credible testimony

(and supporting exhibits) from multiple task force officers who participated in the search of

Defendant's house/property, and resultant seizure of numerous items that evidenced Defendant's

drug trafficking activity, including more than 40 grams of fentanyl, cocaine, marijuana,

$10,590.00 in U.S. currency, thousands of empty stamp bags, a digital scale, wide-mouth straws,

a firearm, and ammunition; (4) credible expert witness testimony (and supporting exhibits) from

Stacy Cox, that the drugs purchased during the August 3, 2017 controlled buy was fentanyl, and

that the drugs seized during the August 30, 2017 search was fentanyl (45.62 grams), and cocaine (9.89 grams); (5) credible testimony from Detective Brink (and supporting exhibits) about texts, voice mail messages, and other evidence retrieved from a pink cell phone seized during the August 30, 2017 search that evidenced drug trafficking activities and Defendant's connection to the phone; and (6) Trooper Warfield and POAG Regional Director Kozlina's credible testimony that on September 19, 2017, during an interview, Defendant: (a) admitted the drugs and pink cell phone seized during the search of his house and property were his drugs and phone; (b) admitted he was involved in drug trafficking; and (c) provided details of his illegal drug trafficking activity with others, including Derick Davare (Defendant's source of supply for cocaine), and Charles Jackson (Defendant's source of supply for fentanyl).

Accordingly, because Defendant has not established that his "newly discovered" evidence, the information contained in the RTK Documents, is "such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal" with respect to any of the charges against Defendant in the Superseding Indictment, Defendant's Motion for a New Trial shall be denied. *Schneider*, 801 F.3d at 202.

IV.     *Conclusion*

Because, for all of the reasons set forth above, Defendant has failed to meet his burden of showing that a new trial is required in the interest of justice, Defendant's Motion for a New Trial Pursuant to Fed. R. Crim. P. 33(a) (Doc. 200) is DENIED.  An appropriate Order follows.

SO ORDERED, this 6th day of April, 2022.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:    All ECF Registered Counsel of Record

        Anthony Taylor
        No. 38944-068
        Loretto FCI
        P.O. Box 1000
        Cresson, PA 16630